Mickey Wayne Sheppard sued his employer, Massey Hauling Company, Inc. ("Massey"), seeking workers' compensation benefits. After a trial, the circuit court found that Sheppard was permanently partially disabled as a result of a work-related accident and that he had suffered a 55% loss of earning capacity. The court awarded benefits accordingly. Sheppard appeals.
The standard of review this court must apply in this case is derived from § 25-5- 81 (e)(1), Ala. Code 1975, which provides: "In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." Furthermore, the Workers' Compensation Act provides that "in reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81 (e)(2). The Alabama Supreme Court has defined "substantial evidence" as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); Ex parte Trinity Industries, Inc.,680 So.2d 262, 268 (Ala. 1996).
Sheppard raises 15 issues on appeal; however, as to the first 13, he makes one argument — that the trial court's judgment finding him to be permanently partially disabled is not supported by the evidence. Instead, Sheppard says, the evidence shows that he is permanently and totally disabled.
Sheppard was working as a truck driver for Massey when he injured his back. The injury occurred when Sheppard slipped on the step on his truck's cab. He landed on his heels with a jarring impact that caused an immediate burning sensation in his lower back.
Sheppard immediately went to Massey's company doctor complaining of back pain. When the pain had not eased after a few days, Dr. Aurora referred Sheppard to an orthopedic specialist, Dr. James Bailey. Dr. Bailey diagnosed a lumbar strain and prescribed physical therapy, but Sheppard still complained of back pain. Dr. Bailey had Sheppard undergo an MRI, and while the scan did show a "bulge," Dr. Bailey said that it did not account for Sheppard's pain. Dr. Bailey also said that Sheppard's physical examinations all appeared normal; he apparently could not find a physical cause for Sheppard's pain.
Eventually Dr. Bailey referred Sheppard to a neurosurgeon, Dr. Randolph George. Dr. George diagnosed Sheppard with "mechanical back pain." A myelogram and CT scan did not reveal any physical cause for Sheppard's pain. Dr. George sent Sheppard to the Pain and Rehabilitation Institute, where he was treated by Dr. Daniel Doleys. While at the Institute, Sheppard was given a functional capacities evaluation from which it was determined he could perform work in the "light" category.
At the conclusion of Sheppard's inpatient treatment at the Pain and Rehabilitation Institute, Dr. George determined that he had sustained a permanent impairment of 5%. At that point, Dr. George told Sheppard to see his family physician, Dr. John Smith.
Sheppard and several friends and family members, testified regarding the activities he could no longer do or enjoy, such as hunting, fishing, and wrestling with his children. Sheppard said that he is often in pain and that he cannot sit, walk, or stand for long periods of time. He said that, because of the pain, he has not worked or looked for a job since the January 1996 accident. However, he is taking classes in computer-assisted design; the classes meet five days a week, and Sheppard appears to be attending most of them. *Page 684 
Videotapes taken by an investigator hired by Massey showed that while Sheppard did display signs of back pain at times, at other times his activities belied his complaints of pain. For example, a tape showed Sheppard going fishing and standing for two hours. He also was seen driving for 30 to 45 minutes without stopping, although Sheppard had said he could not drive for that length of time; he was seen bending over, and he was seen playing with puppies. Although the tapes did not show this particular incident, the investigator also said he had seen Sheppard lift a lawn mower from the back of a pickup truck.
Several vocational experts testified, assigning Sheppard varying degrees of loss of earning capacity. Dr. William Crunk, Sheppard's vocational expert, testified that based on certain factors, including Sheppard's prior work history and his complaints of pain, he believed that Sheppard was employable but that he had sustained a 77% loss of earning capacity.
John Long, Massey's vocational expert, testified that, based on factors such as Sheppard's prior work history and his complaints of pain, he believed that Sheppard was employable but that he had sustained a 40-45% loss of earning capacity.
Donald Parsons, a vocational rehabilitation specialist with the Pain and Rehabilitation Institute, determined that Sheppard was employable but that had sustained about a 50% loss of earning capacity.
The consensus among the vocational experts was that Sheppard could return to work at jobs in the "light duty" category.
 In its judgment, the trial court made the following finding, among others: "[W]hile [Sheppard] maintains he is in severe and disabling pain, based upon the court's observations of [Sheppard], the video tape surveillance introduced into evidence and the uncontroverted medical testimony and records in evidence, [the court finds] that the weight of the evidence is that there is not sufficient objective evidence supporting [Sheppard's] subjective complaints of moderately severe pain, and that [Sheppard] is not disabled to the extent that he is entitled to permanent and total disability [benefits]."
The trial court found that Sheppard was permanently and partially disabled and assigned him a 55% loss of earning capacity.
We are mindful that the Workers' Compensation Act is to be liberally construed to accomplish its beneficent purposes and that doubts must be resolved in favor of the employee. ScottPaper Co. v. Smith, 600 So.2d 269 (Ala.Civ.App. 1992). However, "a trial court's factual findings based upon conflicting ore tenus evidence will not be disturbed on appeal unless such findings are clearly erroneous or manifestly unjust." Webb OilCo. v. Holmes, 660 So.2d 1316, 1319 (Ala.Civ.App. 1995). It is the duty of the trial court, which has the opportunity to observe witnesses and their demeanors, and not the appellate court, to weigh the evidence presented. Id.
The record shows that, despite Sheppard's contentions to the contrary, the parties presented conflicting evidence as to the extent of Sheppard's disability. The trial court's finding of a 55% loss of earning capacity is slightly higher than the 50% loss of earning capacity Parsons, the vocational expert from the Pain and Rehabilitation Institute not connected with either party, assigned to Sheppard. The 55% figure is also about midway between the loss of earning capacity suggested by the parties' vocational experts. The medical evidence also supports the findings of the trial court. The record contains substantial evidence supporting the finding of the trial court that Sheppard is not totally disabled. Substantial evidence also supports the finding that Sheppard suffered a 55% loss of earning capacity.
Sheppard contends, however, that the trial court erred in admitting into evidence the unedited videotape made by Massey's investigator. Specifically, Sheppard contends, the unedited tape should not have been admitted because it was not produced during discovery, or, as he says in his brief to this court, the unedited tape was "intentionally concealed." He claims that because he had not seen the unedited tape before it was *Page 685 
admitted, he was unduly prejudiced by its admission.
Massey originally tried to have admitted into evidence an edited version of its investigator's videotapes; that edited version had been given to Sheppard during the discovery process. However. Sheppard objected to the tape because it had been edited. The trial court agreed with Sheppard and refused to admit the tape because it was not the original. Massey then presented the original, unedited tapes. Sheppard objected to those tapes because he had not seen them. However, the trial court admitted the original tapes.
The investigator, Jason Trahan, testified that during the course of his investigations, he leaves the camera running for hours at a time. He then edits the tapes to omit the pictures made while his subject is not shown. Any time the subject appears on the tape, he said, that portion of the tape is kept. Therefore, according to Trahan, the edited version of the tapes — which Massey had provided to Sheppard during discovery and which Massey initially tried to have admitted into evidence — contained all of the footage in which Sheppard appeared. Sheppard presented no evidence to the contrary.
"A trial court has great discretion in determining the admissibility of evidence, and its rulings will not be reversed on appeal absent an abuse of discretion." Loyal American LifeIns. Co. v. Mattiace, 679 So.2d 229, 232 (Ala. 1996). Sheppard has not shown how he could have been unduly prejudiced by admitting the original videotapes. According to the uncontradicted evidence, the only thing that appeared on the original, unedited tapes that did not appear on the edited version Sheppard had been during discovery was irrelevant footage in which Sheppard was not seen. We cannot say the trial abused its discretion in admitting the unedited videotapes.
Sheppard also claims that the trial court erred in finding that Dr. John Smith Sheppard's family doctor, was not Sheppard's "authorized treating physician." Under Alabama's workers' compensation laws, the employer selects the treating physician. If the employee is dissatisfied with that physician, the employer must provide the employee with a list of four other physicians from which the employee can choose another treating physician. § 25-5-77 (a), Ala. Code 1975.
This court has explained that the purpose behind the law is to strike a balance between the value of allowing a patient to choose his own doctor and the value of "achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury." City of Auburn v.Brown, 638 So.2d 1339, 1340 (Ala.Civ.App. 1993), quoting 2 A. Larson, The Law of Workmen's Compensation § 61.12 (b), at 10-790 (1989). As Professor Larson explained:
 "If the injured employee has completely unlimited free choice of his doctor, in some cases he may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process."
Id.
The law does provide for four instances in which the employee is justified in incurring medical expenses without first obtaining the employer's authorization:
 "(1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee."
City of Auburn, supra, at 1341; Kimberly-Clark Corp. v. Golden,486 So.2d 435 (Ala.Civ.App. 1986).
The trial court made the following findings of fact regarding the authorized treating physician:
 "That [Massey] has paid all reasonable and necessary medical expenses associated with [Sheppard's] compensable injuries to date. The court further finds that Dr. *Page 686 
John Smith is not the authorized treating physician, and though [Massey] has paid some of his bills for treatment of [Sheppard] subsequent to the release by Dr. George, such payments were without waiver of the right to contest Dr. Smith's status as the authorized treating physician. The court finds Dr. Randolph George is [Sheppard's] authorized treating physician. In the event that Dr. George is not willing to continue [Sheppard's] medical care and treatment (as he has indicated in his final examination of [Sheppard] ), the court orders [Massey] to designate an authorized treating physician for [Sheppard's] continued medical management and prescriptions. Finally, the court finds that [Sheppard's] physical therapist recommended that [Massey] provide [Sheppard] with a treadmill or exercise cycle for cardiovascular conditioning. [Massey] elected to provide an exercise cycle. [Sheppard] testified that he already owned an exercise cycle. Accordingly, [Massey] is not now responsible for providing [Sheppard] with a treadmill, or any other appliance prescribed by Dr. Smith.
 "That [Sheppard] is entitled to future medical treatment, care and management by [Massey's] authorized treating physician, Dr. George or another physician as designated by [Massey], at [Massey's] expense so long as said treatment is directly related to [Sheppard's] compensable injury, is reasonable, necessary, and performed by the authorized treating physician."
(Emphasis in the original.)
We find no error or abuse of discretion. The trial court essentially ordered the parties to follow the proper procedures for choosing a physician to oversee Sheppard's future medical treatment, to which the trial court determined Sheppard was entitled. No evidence in the record indicates that Massey ever consented to having Sheppard's family physician, Dr. Smith, as the authorized treating physician. Also, no evidence in the record indicates any of the four circumstances that would justify bypassing the requirement that Massey authorize a treating physician.
Massey paid Dr. Smith's bills, but it made it clear that in doing so it was not agreeing that Dr. Smith was the authorized treating physician and was not waiving its legal right to choose the authorized treating physician for Sheppard's future medical care. The trial court's order properly allows Massey to exercise that right. There is no reason to reverse as to this issue.
The judgment is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES, CRAWLEY, and THOMPSON, JJ., concur.