832 So.2d 648 (2002)
CONSOLIDATED CONSTRUCTION COMPANY
v.
John L. QUINLAN.
2001077.
Court of Civil Appeals of Alabama.
April 19, 2002.
*650 William L. Middleton and Jenny L. McLeroy of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellant.
J. Zach Higgs, Jr., and Robert D. Lee of Higgs & Emerson, Huntsville, for appellee.
THOMPSON, Judge.
On May 1, 1997, John L. Quinlan suffered an on-the-job injury. Quinlan sued his employer, Consolidated Construction Company (hereinafter "Consolidated"), seeking workers' compensation benefits. Quinlan also filed a third-party action against a co-employee, which he settled for $7,500.
Consolidated answered and denied the material allegations of Quinlan's workers' compensation complaint. The trial court conducted an ore tenus hearing. On March 12, 2001, the trial court entered a judgment finding that Quinlan had suffered an on-the-job injury and that he had suffered a permanent total disability as a result of that injury. The judgment also ordered Consolidated to reimburse Quinlan for certain medical treatments for which he had not gotten Consolidated's authorization and credited Consolidated with $5,000, a portion of Quinlan's recovery in a separate action against a co-employee.
Both parties filed postjudgment motions. The trial court entered a postjudgment order amending its original judgment to find that Consolidated was entitled to offset its liability by $5,000, an amount approximately equivalent to Quinlan's net recovery from his third-party action. Consolidated appealed.
The record on appeal indicates that Quinlan began working for Consolidated in February 1997. Quinlan alleged that, on May 1, 1997, he was injured while operating a piece of equipment referred to as a "skidsteer," or "Bobcat." Quinlan testified that while he was operating the machine over rough terrain he was jolted out of the seat and into the back of the cage that surrounds the driver and then back down onto the seat. Quinlan testified that he experienced severe pain on the right side of his body shortly after the accident and that the accident caused the injuries that form the basis of his claim for workers' compensation benefits. Consolidated stipulated that Quinlan suffered an accident as that term is defined in the Alabama Workers' Compensation Act. See § 25-5-1(7), Ala.Code 1975. The parties, however, dispute the extent of Quinlan's injuries.
Following the accident, Dr. Carol Watts treated Quinlan for his injury. Quinlan testified that at the time he sought treatment from Dr. Watts, he suffered from pain on the right side of his body, starting on the right side of his neck and continuing to his coccyx. He also claimed that he could not move his right arm. Quinlan testified that Dr. Watts placed his arm in a sling. Dr. Watts also prescribed a transcutaneous electrical nerve stimulator ("TENS") unit to treat his pain and allowed Quinlan to return to work. The record does not indicate whether Dr. Watts assigned Quinlan any work restrictions. Quinlan testified that he attempted to return to work, but that he could not perform his job duties because of his pain.
Quinlan became dissatisfied with Dr. Watts's treatment. He requested, pursuant to § 25-5-77(a), Ala.Code 1975, that he be allowed to select another authorized physician; Consolidated granted Quinlan's request. Quinlan selected Dr. Ira Denton, a neurosurgeon. In October 1997, Dr. Denton, who was retiring, referred Quinlan to Dr. Calame Sammons, an orthopedic *651 surgeon. Dr. Sammons performed lumbar fusion surgery on Quinlan's back in November 1997. Dr. Sammons testified that that surgery was necessary because Quinlan had not responded to physical therapy and because Quinlan had a pre-existing abnormality in his back. Dr. Sammons testified that Quinlan reached maximum medical improvement on July 14, 1998, and that he had assigned Quinlan an impairment rating of 20% to the body as a whole. Quinlan testified that after his lumbar fusion surgery, he continued to suffer from low back pain and pain down his right side.
Dr. Sammons referred Quinlan to Dr. Morris L. Scherlis for treatment of his pain. Quinlan testified that the medical treatment he received from Dr. Scherlis did not resolve his pain. Quinlan testified that he again requested, pursuant to § 25-5-77(a), Ala.Code 1975, that he again be allowed to select, from a panel of four physicians, another authorized physician. Consolidated did not allow Quinlan to select another physician. Without obtaining authorization from Consolidated, Quinlan sought treatment from Dr. Kenneth Dean Willis.
Dr. Willis gave Quinlan a series of injections to his right lumbosacral spine. Quinlan testified that when those injections did not alleviate his pain, Dr. Willis implanted a morphine pump in his stomach. Quinlan testified that at the time of the hearing in this matter, he was receiving the maximum amount of morphine Dr. Willis would prescribe. Dr. Willis testified that Quinlan reached maximum medical improvement on April 10, 2000. Quinlan testified that Consolidated refused to pay the costs of Dr. Willis's treatment; that cost was $86,421.96. Quinlan testified that his wife's health insurance carrier paid $69,662.45 of that amount.
Patsy Bramlett, a rehabilitation counselor, performed a vocational assessment of Quinlan. Bramlett concluded that Quinlan was unable to perform the type of work he had done in the past and that Quinlan was not a candidate to return to even sedentary work on a sustained basis. Bramlett concluded that Quinlan was not a candidate for vocational rehabilitation, that he was 100% vocationally disabled, and that he might require mental-health counseling to assist him with coping with depression in the future.
Virginia Spruce, a vocational consultant, also evaluated Quinlan. Spruce concluded that Quinlan could not return to his past employment and that Quinlan would have difficulty obtaining gainful employment. Spruce determined that Quinlan was between 65% and 70% vocationally disabled.
In 1992, before the injury that is the subject of this action, Quinlan suffered a work-related injury to his right foot while working for another employer; he sued for and was awarded workers' compensation benefits for that injury. Bramlett was the vocational consultant in both this action and in Quinlan's 1992 workers' compensation action. As a result of the 1992 injury, Bramlett assigned Quinlan a vocational impairment rating of 20%. Quinlan testified that he had also injured his back in a 1978 automobile accident. Quinlan testified, however, that he had fully recovered from both the 1978 and the 1992 injuries and that he had not suffered physical limitations as a result of those injuries. The record indicates that Quinlan's previous work-related injuries did not preclude him from performing his job duties for Consolidated.
This case is governed by the 1992 Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975, which provides that our review of a trial court's conclusions of law is without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. The Workers' Compensation Act further provides that "[i]n reviewing *652 pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2), Ala.Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Consolidated does not challenge the trial court's determination that Quinlan was permanently, totally disabled. Rather, Consolidated alleges that Quinlan suffered a permanent, partial disability as a result of his 1992 on-the-job injury, and it argues that because Quinlan had not fully recovered from his 1992 injury at the time of the injury in this case, it should be held liable only for any additional disability Quinlan suffered. See §§ 25-5-57(a)(4)e. and 25-5-58, Ala.Code 1975. Consolidated bases its argument on Quinlan's testimony that, as a result of his 1992 on-the-job injury, Bramlett had assigned him a 20% vocational impairment rating. However, the record does not contain any evidence indicating that a trial court adopted Bramlett's assessment or assigned Quinlan a disability rating. Thus, other than Quinlan's testimony that a rehabilitation counselor assigned him a disability rating, the record on appeal contains no evidence to support Consolidated's allegation that Quinlan had suffered a previous permanent, partial disability that might be relevant to the determination of his workers' compensation benefits with regard to the injury at issue in this case. Given the lack of evidence in the record on appeal, we cannot say that the trial court, in determining the extent of Quinlan's disability caused by the May 1, 1997, injury, erred in failing to consider any alleged disability Quinlan suffered as a result of his 1992 on-the-job injury.
Consolidated also argues that the trial court erred in requiring it to pay the costs of Dr. Willis's treatment. Consolidated argues that Dr. Willis's treatment was an unauthorized medical treatment and, therefore, that it was not obligated to pay for that treatment. Consolidated cites Sheppard v. Massey Hauling Co., 726 So.2d 682 (Ala.Civ.App.1998), as being dispositive of the issue of treatment by an unauthorized physician.
In Sheppard v. Massey Hauling Co., the plaintiff, Sheppard, sought treatment from Dr. John Smith, his family physician, for injuries he alleged were compensable under the Alabama Workers' Compensation Act. The employer paid Dr. Smith's bills for treating Sheppard, but it did not waive its right to object that Dr. Smith was not an authorized treating physician and to argue that, on that basis, it was not responsible for the costs of Dr. Smith's treatment of Sheppard. See Alverson v. Fontaine Fifth Wheel Co., 586 So.2d 216, 217 (Ala.Civ.App.1991) ("Section 25-5-77(a), Code 1975, requires the employer to pay the actual cost of reasonably necessary medical and surgical treatment, physical rehabilitation, and medicine if the treatment is obtained by an authorized physician."). The trial court found that Dr. Smith was not Sheppard's authorized treating physician. Sheppard appealed. In addressing Sheppard's appeal, this court set forth the law regarding whether an employer is liable for the cost of an employee's unauthorized medical treatment:
"Under Alabama's workers' compensation laws, the employer selects the treating physician. If the employee is dissatisfied with that physician, the employer must provide the employee with a list of four other physicians from which the employee can choose another treating physician. § 25-5-77(a), Ala.Code 1975.

*653 "....
"The law does provide for four instances in which the employee is justified in incurring medical expenses without first obtaining the employer's authorization:
"`(1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee.'"
Sheppard v. Massey Hauling Co., 726 So.2d at 685. This court concluded that the evidence supported the trial court's finding that Dr. Smith was not an authorized physician and held that the record did not contain evidence that would support any of the four exceptions that would impose on the employer liability for the cost of Sheppard's unauthorized medical treatment. Sheppard v. Massey Hauling Co., 726 So.2d at 686.
In its judgment in this case, the trial court recognized the four exceptions under which an employer could be responsible for payment of an employee's unauthorized medical treatment. The trial court found that three of the exceptions applied in this case: the trial court found that Consolidated had neglected or refused to provide the necessary medical care to Quinlan; that a request for alternative care by Quinlan would have been futile; and that other circumstances existed that justified Quinlan's selection of alternative care.
Consolidated, citing § 25-5-77(a), Ala. Code 1975, argues that the evidence in this case does not support the trial court's finding that Consolidated did not provide required medical care to Quinlan. Section 25-5-77(a) provides:
"If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer."
Quinlan testified that after he became dissatisfied with Dr. Scherlis's treatment, he requested, pursuant to § 25-5-77(a), a panel of physicians from which to choose another authorized physician, but that Consolidated denied his request. Therefore, Quinlan testified, he sought a "second opinion" from Dr. Willis. Dr. Willis testified that Quinlan first came to him on a "self referral." Dr. Willis testified that Dr. Scherlis had recommended a series of injections to treat Quinlan's pain; Dr. Willis testified that he agreed with Dr. Scherlis's diagnosis and plan for the treatment of Quinlan's pain. Dr. Willis recommended that Quinlan return to Dr. Scherlis for continued care and treatment. However, according to Dr. Willis's testimony, Quinlan contacted Dr. Willis again and asked Dr. Willis to treat him for his pain; Dr. Willis consented to treat Quinlan for his pain. The record indicates that Quinlan did not return to Dr. Scherlis and that Dr. Willis was still treating Quinlan for pain at the time of the hearing in this matter.
Consolidated argues that Quinlan's dissatisfaction with his treatment from Dr. Scherlis followed by his subsequent treatment from Dr. Willis does not satisfy the requirement in § 25-5-77(a) that further treatment was required, and it further argues that Quinlan did not demonstrate that Consolidated had refused to provide necessary medical care. See Sheppard v. Massey Hauling Co., supra. We agree. There is no evidence in the record indicating that Dr. Scherlis did not provide Quinlan *654 the treatment necessary for his pain. The record clearly demonstrates that Dr. Scherlis was treating Quinlan for pain, and that Dr. Willis, the physician from whom Quinlan sought a second opinion, approved Dr. Scherlis's treatment and recommended that Quinlan return to Dr. Scherlis for treatment. Further, Dr. Willis's initial treatment of Quinlan was to administer the same injections Dr. Scherlis would have provided. Thus, the evidence in the record shows that Consolidated authorized Dr. Scherlis to treat Quinlan's pain; however, Quinlan elected not to return to Dr. Scherlis, his authorized treating physician. We cannot say that the evidence in the record supports the trial court's determination that the evidence supports a finding that Consolidated "`neglected or refused to provide the necessary medical care.'" See Sheppard v. Massey Hauling Co., 726 So.2d at 685, quoting City of Auburn v. Brown, 638 So.2d 1339, 1341 (Ala.Civ.App. 1993). Therefore, we must conclude that the trial court erred in determining that under that exception Consolidated was required to pay for the cost of Quinlan's medical treatment by Dr. Willis, which was unauthorized. Further, because we conclude that Quinlan did not present sufficient evidence indicating that Dr. Willis's treatment was necessary, we need not address the issue whether a notice of and request for that treatment would have been futile. See Sheppard v. Massey Hauling Co., supra.
In its March 12, 2001, judgment, the trial court also found that another exception set forth Sheppard v. Massey Hauling Co., supra, applied to the facts of this case; specifically, the trial court found that "other circumstances" existed that justified Quinlan's election to seek treatment from Dr. Willis. The trial court did not identify those "other circumstances." We have reviewed the record on appeal, and we must conclude that it does not contain evidence supporting the trial court's conclusion that other circumstances existed that justified imposing on Consolidated liability for the payment of Quinlan's unauthorized alternative medical treatment. See Sheppard v. Massey Hauling Co., supra.
In summary, Consolidated could be liable for Quinlan's unauthorized medical treatment only if Quinlan presented evidence in support of one or more of the exceptions set forth in Sheppard v. Massey Hauling Co., supra. We conclude that the evidence in the record does not support a determination that any of those exceptions requires Consolidated to pay for Quinlan's unauthorized medical treatment. Therefore, we must reverse the trial court's judgment insofar as it requires Consolidated to pay for the costs of Dr. Willis's treatment.
Consolidated also contends that the trial court erred in failing to give it sufficient credit for the amount of Quinlan's recovery from a settlement in a third-party action. The parties stipulated at trial that Quinlan had initiated a co-employee action that he settled for $7,500. In its March 12, 2001, judgment, the trial court determined that Consolidated was entitled to a $5,000 credit; that amount represented the net proceeds Quinlan received in his co-employee action.
Section 25-5-11, Ala.Code 1975, provides:
"(a) ... If the injured employee ... recovers damages against the other party, the amount of the damages recovered and collected shall be credited upon the liability of the employer for compensation. If the damages recovered and collected are in excess of the compensation payable under this chapter, there shall be no further liability on the employer to pay compensation on account of the injury or death. To the extent of the recovery of damages against the other party, *655 the employer shall be entitled to reimbursement for the amount of compensation theretofore paid on account of injury or death....
"....
"(e) In a settlement made under this section with a third party by the employee... the employer shall be liable for that part of the attorney's fees incurred in the settlement with the third party, with or without a civil action, in the same proportion that the amount of the reduction in the employer's liability to pay compensation bears to the total recovery had from the third party."
Our supreme court has explained that "[§] 25-5-11(e) provides a mechanism by which an attorney can be compensated for his efforts in a third-party action that reduces an employer's liability to pay future workers' compensation benefits." Ayers v. Duo-Fast Corp., 779 So.2d 210, 215 (Ala. 2000).
In Fitch v. Insurance Co. of North America, 408 So.2d 1017 (Ala.Civ.App. 1981), the injured employee, Fitch, settled her co-employee action for $3,000. Fitch's employer sought reimbursement of the workers' compensation benefits it had paid Fitch. The trial court entered a judgment finding that the employer was entitled to reimbursement from the proceeds of the $3,000 settlement from the co-employee action, less the employer's share of fees and expenses. Fitch appealed. This court agreed with the employer that "its claim for reimbursement attache[d] to the entire $3,000.00 recovery, such that [the employer was] entitled to recover the full amount paid by it to Fitch. This recovery [is] offset by [the employer's] pro rata portion of attorney's fees and expenses." Fitch v. Insurance Co. of North America, 408 So.2d at 1018. This court stated:
"We cannot support the view that damages `recovered and collected,' as stated in § 25-5-11(a), include only that amount which Fitch retains after payment of her attorney's fees. It is clear that the statute presupposes that the entire money judgment recovered, $3,000.00 in the present case, is the sum to which the insurer's claim for reimbursement attaches. Nowhere is it mentioned that only the `net' recovery, after payment of attorney's fees, is intended. The purpose behind § 25-5-11(a) is to preclude the employee from recovering twice for the same injury. Fitch has already received $2,170.79 in compensation benefits from [the employer]; she has also recovered a judgment of $3,000.00 from a third party for the same injury. To deduct her attorney's fees prior to reimbursing [the employer] would in essence be to allow Fitch to benefit twice from her injury. Such is not allowed under the statute."
Fitch v. Insurance Co. of North America, 408 So.2d at 1018-1019 (citations omitted).
In this case, the trial court awarded a credit to Consolidated for Quinlan's "net" recovery from a co-employee lawsuit. However, as this court held in Fitch v. Insurance Co. of North America, supra, § 25-5-11(a), Ala.Code 1975, does not contemplate recovery for only the net proceeds of a third-party action. However, § 25-5-11, Ala.Code 1975, requires that Consolidated pay "on a pro rata basis" that part of the fees and expenses incurred in Quinlan's third-party action. See Ayers v. Duo-Fast Corp., 779 So.2d at 216.
Based on the foregoing authority, we conclude that the trial court erred in determining the amount of the credit to which Consolidated was entitled from the proceeds of Quinlan's settlement of his co-employee action. Therefore, we reverse the judgment insofar as it awards Consolidated a credit and remand the case for the trial court to calculate that credit pursuant to the holdings in Ayers v. Duo-Fast *656 Corp., supra, and Fitch v. Insurance Co. of North America, supra.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY and PITTMAN, JJ., concur.
YATES, P.J., concurs in part and dissents in part.
MURDOCK, J., dissents.
YATES, Presiding Judge, concurring in part and dissenting in part.
I concur with the main opinion as to the issues of disability and the credit given Consolidated. However, because I believe substantial evidence existed from which the trial court could conclude that Consolidated had neglected or had refused to provide the necessary medical care for Quinlan, I must respectfully dissent from that portion of the main opinion that concludes that the trial court erred in requiring Consolidated to pay the cost of Quinlan's unauthorized medical treatment.
The main opinion correctly sets forth the four instances when the employee is justified in incurring medical expenses without first obtaining the employer's authorization. Here, Quinlan was being treated by Dr. Scherlis, who had recommended a series of injections to treat Quinlan's pain. Dr. Willis testified that he agreed with Dr. Scherlis's diagnosis and treatment plan for Quinlan's pain and recommended that Quinlan return to Dr. Scherlis. However, Quinlan eventually returned to Dr. Willis, who ultimately went beyond Dr. Scherlis's proposed treatment of Quinlan and implanted a morphine pump to treat Quinlan's pain. Quinlan stated that he was receiving the maximum amount of morphine allowed by Dr. Willis to treat his pain. I believe that the trial court could conclude from this evidence that Consolidated had neglected or had refused to provide Quinlan with the necessary medical treatment and that Quinlan was justified in seeking treatment from Dr. Willis; therefore, as to that portion of the opinion I dissent.