Denise Wilson Jackson appeals from a judgment denying her workmen's compensation benefits for an injury she sustained at Comptronix Corporation on July 9, 1991.[1]
In 1982, when she was 14 years old, Jackson was seriously injured in a motor vehicle accident. She sustained a broken leg and a depressed skull fracture that required surgical insertion of a plate in her forehead. Beginning in 1987, Jackson consulted several physicians for lower back pain. In 1988, she reported to Dr. James White, a Gadsden neurosurgeon, that she had had lower back pain ever since her car accident in 1982. She told Dr. White that the pain was so severe that she was "unable to participate in any of her daily activities." Dr. White hospitalized Jackson for tests, including a myelogram. He concluded that she had an osteophyte, or bony spur, impinging on a nerve in her lumbar spine and that she was suffering from lumbar strain.
Jackson began working at Comptronix on September 26, 1988, when she was 20 years old. On July 9, 1991, Jackson leaned over to pick up a box at work, and she felt a sharp pain in her back. That evening, she went to the emergency room of a local hospital where she was treated with anti-inflammatory and pain medications. She received no relief from those medications and, two days later, she went to her family physician, Dr. Thomas Darnell. Dr. Darnell prescribed additional medication and suggested rest. Complaining that she still had pain, Jackson returned to Dr. Darnell on July 15, and Dr. Darnell put her in the hospital.
Jackson remained in the hospital for seven days. During that time she had X-rays of her spine and physical therapy, and she was evaluated by Dr. Joe Kendra, an orthopedic surgeon. Dr. Kendra diagnosed her condition as lumbosacral strain.
Following the July 9, 1991, injury, Jackson was out of work for 10 months, during which time she became pregnant. She returned to light duty work at Comptronix on May 11, 1992, and stayed for a little over a month. On June 15, 1992, when she was six months pregnant, she fell at work. She began to experience pains that she thought were pre-term labor contractions; she consulted her obstetrician, who hospitalized her for observation. On the advice of her obstetrician, she began her maternity leave that day. She never returned to work after the birth of her child, because of back pain.
Jackson filed a complaint for workmen's compensation benefits for two work-related injuries: the first on July 9, 1991, resulting, she alleged, in a hurt back; and the second on June 15, 1992, causing, she alleged, injured muscles in her lower stomach. Comptronix *Page 1081 
paid Jackson's medical expenses for the 1991 injury, as well as temporary total disability benefits of $4005.68. At trial, the parties stipulated that Jackson's claim for medical expenses or compensation arising from the 1992 injury was without merit.
Following ore tenus proceedings, the trial court found that Jackson was totally and permanently disabled, but that her disability was "not caused or contributed to" by the 1991 on-the-job injury. The judgment of the court states, in pertinent part:
 "There is no question in the court's mind, the court finds that at the present time, the plaintiff is totally disabled to earn because of severe back pain and there is no reason to think that said condition is anything other than permanent. The more difficult question for the court to determine is whether or not the back pain is caused by or at least contributed to by the accident of July 9th.
 "Medical evidence is far from clear. On November 20, Dr. Murray wrote the workers compensation insurance company: 'Ms. Jackson's back strain was caused by lifting at work. As she had a previous condition of degenerative joint disease this makes her more susceptible to back strain but this is a new exacerbation due to a work injury.' The same doctors, forty days later [actually 20 days earlier] wrote to Debra G. Powell who apparently was the plaintiff's attorney at the time and said that the plaintiff 'has a degenerative joint disease of the spine. It is difficult to relate this to work as she had this chronically and has been evaluated both in 1991 and 1988 for the same problem. Certainly lifting and bending exacerbates any pain but the degenerative joint disease has preceded any work injury.' Dr. Billue reported on June 22, 1992, that the plaintiff called wanting a note stating that she was unable to work due to her back pain. The doctor told the patient that this was not work related but pregnancy related. . . . Dr. Schottland, in a letter of November 13, 1991, thought [Ms. Jackson's] pain was probably from an automobile accident 'but with perhaps some [work] injury related exacerbation.' . . . There was a long period of time when [Ms. Jackson] did not complain of back pain following the 1991 accident. Plaintiff's exhibit 3, pages 27, 28 and 29.
 "The court finds that the plaintiff's present condition is not caused or contributed to by the injury of 1991. It appears to this court that the troubles following the [automobile] accident have only continued and that the [work-related] accident in question had only a temporary impact on her condition. The plaintiff has the burden of proof as to this issue of causation and she has failed to meet the same."
Jackson argues that the trial court's denial of benefits was based upon an error of law, namely: the erroneous assumption that her pre-existing back injury precluded an award of benefits for permanent partial disability. Jackson correctly maintains that a pre-existing condition, as defined in Ala. Code 1975, § 25-5-58, is not present for purposes of compensation if, prior to the accident, the employee was able to perform her duties.
 "It is well settled that workmen's compensation is not limited to those in perfect health. If the employment aggravated, accelerated, or combined with a latent disease or infirmity to produce disability, the preexisting disability does not disqualify the claim under the 'arising out of employment' requirement of the statute."
Ex parte Lewis, 469 So.2d 599, 601 (Ala. 1985) (quoting SouthernCotton Oil Co. v. Wynn, 266 Ala. 327, 333, 96 So.2d 159, 164
(1957)). "It is the law in this state that there is no pre-existing condition or disease if the employee was able to perform his duties prior to the subject injury." Graham v.American Cyanamid Co., 634 So.2d 581, 584 (Ala.Civ.App. 1994). It is undisputed that, despite prior back problems, Jackson performed her job duties for nearly three years at Comptronix before her 1991 injury.
Comptronix maintains that the principles of law relating to pre-existing conditions do not dispense with the requirement that an employee must establish a causal relationship between her current disability and her on-the-job injury. Comptronix concedes that Jackson proved legal causation, but it contends that Jackson did not establish medical causation. In order to establish legal *Page 1082 
causation, the employee need only prove that the injury arose out of and in the course of her employment. Trinity Industries,Inc. v. Cunningham, 680 So.2d 253, 259 (Ala.Civ.App. 1995). Medical causation is established by proof that an on-the-job injury "caused or contributed to" the employee's disability.Id.
Jackson claims that she established medical causation because, she says, all the medical evidence submitted at trial indicated that her 1991 work-related injury aggravated her preexisting back problems and contributed to her current disability. She argues that there was no medical evidence that the 1991 injury did not cause or contribute to her disability. We agree.
The trial court's judgment recounts the findings of two physicians that actually refute the court's later conclusion that Jackson's 1991 injury did not contribute to her current disability. Dr. Murray's conclusion, recited in the trial court's judgment, was that Jackson "had a previous condition of degenerative joint disease . . . mak[ing] her more susceptible to back strain but this is a new exacerbation due to a workinjury." Similarly, Dr. Schottland's determination, quoted in the trial court's order, was that "[Ms. Jackson's] pain was probably from an automobile accident 'but with perhaps some[work] injury related exacerbation.' "
The trial court's judgment also recites the conclusion of Dr. Billue that "this [injury] was not work related but pregnancy related." The record demonstrates that Dr. Billue is an obstetrician who examined Jackson after her 1992 injury, not after her 1991 injury. On June 15, 1992, Dr. Billue hospitalized Jackson. The physician's discharge summary reads as follows:
 "The patient is a 25 year old at 26 1/2 weeks gestation, admitted on 6-15-92 with irregular contractions and lower abdominal pain. . . . The patient lifts heavy objects at work and has had problems with lower abdominal pain. . . . Patient's discomfort resolved overnight and she was discharged home in good condition on 6-16-92. . . . She is to . . . remain on limited activity [and] to start maternity leave. There is no evidence of work-related cause for her pre-term labor contractions."
Dr. Mary F. Holley, a physician practicing with Dr. Billue, wrote the following letter on August 5, 1992:
 "This is a letter clarifying the complaints of Denise Jackson regarding a fall she sustained at work. The fall was related to the onset of premature labor and ligament pain that required a hospital stay for observation. She did not require any medicine for the premature labor and it resolved spontaneously. However, the ligament pain has continued and is likely being exacerbated by the increasing size of the uterus. Her ligaments have remained tender and the pain is exacerbated by even trivial activity."
Dr. Billue's comments classifying Jackson's injury as pregnancy-related rather than work-related were clearly directed to the 1992 injury and not to the 1991 injury at issue here. Therefore, they lend no support to the trial court's findings of fact.
The trial court's judgment makes a further finding of fact that is totally unsupported in the record. The court states that "[t]here was a long period of time when [Ms. Jackson] did not complain of back pain following the 1991 accident. Plaintiff's exhibit 3, pages 27, 28 and 29." Plaintiff's exhibit 3 is the deposition of Dr. Thomas Darnell, a family practice physician whom Jackson consulted after her 1991 injury, and who referred her to orthopedic specialists. Although pages 27, 28, and 29 of that deposition do indicate that there was a period of time after her 1991 injury when Jackson did not complain to Dr. Darnell, a family practitioner, about her back pain, the record is clear that during that same period of time Jackson saw four specialists a total of 25 times for her back problems. Thus, no reasonable view of the evidence supports the trial court's finding that Jackson's complaints of back pain ended soon after her 1991 injury.
The two-step process of appellate review in workmen's compensation cases has been explained as follows:
 "Initially, the reviewing court will look to see if there is any legal evidence to support the trial court's findings. If such *Page 1083 
evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court's judgment.
 ". . . Of course, a trial court's 'findings of fact' that are, in reality, an application of the law to the facts, or that are, stated differently, legal conclusions, do not come within the purview of the 'presumption of correctness' standard."
Ex parte Eastwood Foods, Inc., 575 So.2d 91, 93 (Ala. 1991). See also Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). We conclude that the trial court either misapplied the law to the facts (by erroneously requiring Jackson to prove that her 1991 on-the-job injury was the sole cause of her disability), or that the court rendered a judgment that is unsupported by any reasonable view of the evidence. This court observed under similar circumstances in Graham v. American Cyanamid Co.:
 "It is the opinion of this court that the findings of fact by the trial court are not supported by any reasonable view of the evidence and that its conclusions of law are not supported by its own findings of fact. For these reasons the judgment of the trial court is reversed. The case is remanded with directions to enter a judgment in favor of the claimant and to determine the degree of disability and proper compensation."
634 So.2d at 584-85. We are of the same opinion in this case, and we remand this case with the same directions.
REVERSED AND REMANDED WITH DIRECTIONS.
THIGPEN and YATES, JJ., concur.
ROBERTSON, P.J., and MONROE, J., dissent.
[1] The review of this case is governed by Ala. Code 1975, § 25-5-1
et seq., the Workmen's Compensation Act, which was in effect before the amendments of May 19, 1992.