[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 740 
Jackie Dale Reeves, Jr., sued his former employer, BEK Construction Company ("BEK"), seeking workers' compensation benefits based on an injury he suffered on September 18, 1998, in the line and scope of his employment at BEK. BEK answered and denied liability. In March 2003, at an ore tenus proceeding, the trial court heard testimony from Reeves and Danny Tumbleston, Reeves's former supervisor at BEK. The transcribed deposition testimony of physicians Dr. Thomas Wilson and Dr. Michael Gerhardt was also admitted into evidence, as well as the deposition testimony and vocational-evaluation reports of vocational experts Russ Gurley and Tom Clark. Several other exhibits were admitted into evidence, including a report of a functional capacity evaluation ("FCE"), Reeves's employment records with BEK, and Reeves's medical records.
On September 10, 2003, the trial court entered a detailed final judgment in which it found Reeves to be permanently and totally disabled as the result of a work-related injury, and it awarded benefits accordingly. The trial court's judgment included the following pertinent findings of fact:
 "On Friday, September 18, 1998, Reeves sustained an on-the-job injury to his back while installing a crane motor at the Bridgeport job site for BEK. Reeves's injury arose out of and occurred within the line and scope of his employment for BEK.
 "BEK received actual and timely notice of the injury at issue. The only instructions Reeves received from BEK regarding his responsibility following an on-the-job injury was to report that injury to his supervisor. Reeves met that obligation on September 21, 1998. On Monday, September 21, 1998, upon returning to Birmingham, Reeves reported the injury to Danny Tumbleston; Tumbleston candidly admitted that fact. Further, the `Employer's First Report of Injury,' completed by Danny Tumbleston, acknowledges that Reeves was injured on September 18, 1998, while installing an engine at Bridgeport and that Reeves reported *Page 741 
that injury to Danny Tumbleston on September 21, 1998.
 "According to the BEK procedures taught to Reeves, in the event Reeves required time off from work for medical treatment, he was first required to obtain the approval of Danny Tumbleston. On September 21, 1998, after reporting the injury, Reeves took time off from work to receive medical treatment from Dr. Douglas Moore, a family practitioner. Reeves complained of the on-the-job back injury on that September 21, 1998, treatment date with Dr. Moore. Thereafter, Reeves continued to receive medical treatment and obtained permission for his excused, medical related work absences. Based upon the foregoing, the Court finds that BEK had actual and timely notices of Reeves's on-the-job injury.
 "Reeves underwent continuous medical treatment for that back injury from the date of the injury through the date of the trial of this matter. During that time, Reeves was treated by, inter alia, Dr. Douglas Moore, Dr. Brice Brackin, Dr. Michael Gerhardt, Dr. Martin Jones, Dr. Thomas Wilson, and Dr. Ronald Moon.
 "Two surgical procedures were conducted following the injury at issue. A lumbar microdiscotomy was conducted at L4-5 on August 31, 2000, by Dr. Thomas Wilson at St. Vincent's Hospital.
 "Reeves returned to work for BEK at a less physically demanding position after that procedure.
 "On March 28, 2002, Dr. Gerhardt performed a fusion of L2 through L5, a laminectomy of L2, L3, L4 and L5, a posterior inter-body fusion at L2 through L5 bilaterally with six bone dowels, posterior instrumentation, eight screws, two rods and one cross link lateral fusion bilaterally at L2 through L5.
 "Following the procedure Reeves attempted to return to work with substantial accommodations made by BEK due to his physical limitations. Nevertheless, Reeves was not able to perform even the most sedentary duties. This evidence is undisputed.
 "BEK contends that the current disability of Reeves was not caused by his September 18, 1998, injury; but, instead was caused by a pre-existing 1997, on-the-job injury or a subsequent intervening back injury.
". . . .
 "It is uncontested that while working for BEK Reeves had a 1997 back injury which required surgery. Reeves returned early and resumed his full-time work for BEK with no limitations following that injury. He was fully capable of performing his job, and did so until his September 1998, injury. Dr. Gerhardt testified that it was his opinion that `Reeves's activities in working on a motor in September of 1998 probably caused or aggravated the injury.' (Dr. Gerhardt depo., 41.)
 "Further, Reeves testified that although he had good days and bad days regarding the back pain, he did not suffer any distinct intervening injury between September 18, 1998, and the date of the trial of this case. The Court, having considered all evidence presented in that regard, finds the testimony of Reeves to be credible and concludes that no intervening injury caused the current disability of Reeves. The Court, therefore, finds that it was the 1998 injury, and not the 1997 injury, which is the cause of Reeves's present disability.
 "At the end of August 2002, Reeves was terminated by BEK. He received no further salary or benefits, and received medical treatment for which there has been no payment. He also incurred out-of-pocket expenses for medical co-payments, prescription drugs *Page 742 
and the purchase of the [Transcutaneous Electrical Nerve Stimulation] unit. These expenses totaled $2,490.
 "Both Tumbleston and Reeves testified that Reeves could no longer perform his job duties at BEK at the time of his termination.
 "Both vocational experts, Tom Clark and Russ Gurley, agree that, if Reeves is not capable of working at a sedentary level, he is permanently and totally disabled.
 "Reeves credibly testified that if he could have continued his employment with BEK he would have. He obviously appreciated his job and enjoyed his work. BEK treated him very well during his tenure with the company.
 "Having observed Reeves's demeanor and mannerisms, and considering his physical condition and state of mind as revealed through his testimony, the Court finds that Reeves's condition is such that he cannot perform sustained sedentary employment at this time, or in the future. The Court finds that Reeves is in no way a malingerer, and that he would work if he could."
In its judgment, the trial court ordered BEK to reimburse Reeves for past workers' compensation benefits in the amount of $17,171.80, reduced by a 15% attorney fee, and to pay Reeves permanent and total disability workers' compensation benefits for the "rest of [his] life." BEK was also ordered to reimburse Reeves $2,490 for his out-of-pocket medical expenses.[1]
The trial court further ordered BEK to pay all outstanding and future medical expenses, including vocational benefits incurred as a result of Reeves's September 18, 1998, injury "for the remainder of [Reeves's] life." No postjudgment motions were filed, and BEK timely appealed.
At the outset we note that we have carefully reviewed the record on appeal and find that the trial court's findings of fact are supported by substantial evidence in the record. In addition to those findings detailed in the trial court's judgment, the record reveals the following pertinent facts. At the time of trial, Reeves was 36 years old. Reeves dropped out of school after completing the seventh grade. Reeves's father taught him the skills necessary to become a mechanic. Reeves has worked as a mechanic for 20 years. In 1996, Reeves began working for BEK as a mechanic; his work as a mechanic was, at times, physically demanding.
In 1997, Reeves injured his back in the course of his employment with BEK. Reeves testified that before his employment with BEK he had had no problems with his back. On November 19, 1997, Dr. Gerhardt performed a lumbar laminectomy to correct herniated disks Reeves had at the L2-3 and L3-4 levels that were impinging on nerve roots in his spine. Reeves was informed that he should expect for it to take six to eight weeks for recovery. Reeves testified that within one month after his surgery he began to feel better and returned to work early. Reeves testified that he was capable of performing his job after the 1997 surgery. Reeves continued to receive treatment for back pain; the course of treatment included epidural blocks and prescription medication. According to Reeves, his back had improved after the surgery.
In early 1998, Reeves was promoted to the position of maintenance supervisor. *Page 743 
As a maintenance supervisor, Reeves was responsible for handling paperwork and performing light mechanical work. Personnel evaluations of Reeves's job performance made by his supervisor, Tumbleston, in March 1999 and March 2000 that were submitted into evidence at trial, indicate that Reeves's job performance was above average.
On September 18, 1998, Reeves injured his back a second time while pulling a motor out of a crane in Bridgeport. Reeves testified that the pain he felt in his back was "deeper" than the back pain that he felt immediately after his 1997 injury. Reeves testified that he left the job site to buy some over-the-counter pain medication for his back and returned to complete the job that day. According to Reeves, he stayed in bed for the majority of the weekend and reported his injury to Tumbleston the following Monday. Reeves testified that he told Tumbleston that he was going to go to the doctor and that Tumbleston said "okay." Reeves stated that he went to the doctor several times shortly after the September 1998 accident and that he informed Tumbleston of those visits. Reeves testified that he discussed his back injury and his complaints of back pain with Tumbleston. Reeves submitted documentation of two visits on November 2 and 5, 1998, to Dr. Brackin of Brookwood Orthopedic Associates, P.C., that were contained in BEK's records.[2]
Reeves testified that he sought treatment to manage his back pain from September 1998 until August 2000. Reeves testified that he had no new injuries to his back after the 1998 injury. On cross-examination BEK submitted a record of a visit by Reeves on August 7, 2000, to HealthSouth Medical Center at which he complained of right lumbar and leg pain resulting from attempting to pick up a fork bar on July 29, 2000.[3] Reeves testified that, while at work, he tried to lift the fork bar but felt a muscle pull in his back and immediately called a coworker to lift the fork bar for him. According to Reeves, the pull he felt in his back after trying to lift the fork bar felt different from the pain he felt in 1998 when pulling the motor out of the crane.
According to Reeves, he was initially reluctant to undergo a second operation on his back because of the risks associated with the surgery. However, in August 2000, Dr. Wilson recommended surgery, and on August 31, 2000, he performed a lumbar microdiscectomy to correct a herniated disk at the L4-5 level of Reeves's back. Reeves testified that his back did not improve after the August 2000 surgery. A third surgery was performed on Reeves's back by Dr. Gerhardt on March 28, 2002, in order to fuse four disks in Reeves's spine.
According to Reeves, his condition initially improved after the March 2002 surgery but subsequently began to deteriorate. Reeves returned to work in June 2002 and was assigned a job at which he handled billing and records. Reeves testified that he had trouble standing and that he could not sit for long periods of time; he testified that he was only able to work six hours a day. According to Reeves, his pain medication did not control all of his pain. Reeves stated that, although he liked the job that he was assigned to, he was unable to fulfill the requirements of *Page 744 
that job. Reeves's employment with BEK was terminated in September 2002.
Reeves testified that it is painful for him to stand, sit, drive, bend, and stoop. According to Reeves, everyday tasks are a chore; he cannot put on his shoes and is limited to walking 35 to 40 feet before having difficulty. Reeves noted that he now walks with a limp and cannot stand straight. Reeves testified that he takes pain medication several times a day and uses a Transcutaneous Electrical Nerve Stimulation ("TENS") unit three to four times a day to help the pain dissipate.[4]
According to Reeves, he is incapable of working an eight-hour day.
Reeves admitted that he sought treatment after his September 1998 injury from doctors that were not authorized by BEK to treat his injury. According to Reeves, he merely informed Tumbleston when he was going to the doctor. Reeves testified that he submitted his insurance claims for doctor visits after his 1997 and 1998 injuries to his personal health insurance carrier.[5] According to Reeves, he spoke with Tumbleston before his second surgery in August 2000 about filing his claims as workers' compensation claims, but Tumbleston told him to worry about that only after his health insurance quit paying the claims. Reeves testified that no one with BEK explained the difference between filing claims under workers' compensation insurance and personal health insurance. Reeves stated that he believed that there was no difference based on statements by his coworkers and his belief that BEK was self-insured.
Tumbleston testified that he had worked as Reeves's supervisor for six years and that Reeves was a good, dependable, and hard-working employee. According to Tumbleston, Reeves reported his September 1998 injury to him the Monday following the accident. Tumbleston testified that Reeves did not inform him that he needed medical treatment for his back at that time. Tumbleston noted that Reeves did not inform him that he was receiving medical treatment for his back until August 24, 2000, when the "Employer's First Report of Injury" was filed. Tumbleston testified that Reeves did not ask for, or receive, authorization to see a company-approved doctor. Tumbleston maintained that he would have filled out an injury report earlier if Reeves had informed him that he needed medical treatment. A copy of the August 2000 "Employer's First Report of Injury" was admitted as an exhibit at trial; the report listed September 18, 1998, as the date of injury and was signed by Tumbleston.
Tumbleston admitted that BEK employees are only instructed to immediately report all on-the-job injuries to their supervisor and are not told to seek approved doctors for treatment of on-the-job injuries. Tumbleston testified that Reeves reported his on-the-job injuries, as required, every time he was injured. According to Tumbleston, BEK employees receive no training regarding procedures to follow if they are injured on the job, other than the requirement that they immediately report the injury to a supervisor. However, Tumbleston stated that Reeves had previously reported two injuries to him in January 1997 and March 1997, after which he was taken to a doctor for medical treatment; BEK paid for that treatment. Tumbleston testified that he believed Reeves knew how to report on-the-job injuries given his injuries in January 1997, *Page 745 
when Reeves had a foreign object in his eye, and March 1997, when he received an electrical shock to his right shoulder. BEK submitted copies of the "Employer's First Report[s] of Injur[ies]" for both of those injuries into evidence at trial.
The trial court also had before it the deposition testimony of Dr. Wilson. Dr. Wilson first saw Reeves for treatment on June 8, 2000. Dr. Wilson testified that a May 8, 2000, MRI of Reeves's back evidenced postoperative changes from his 1997 surgery and widespread degenerative changes in the spine. On August 18, 2000, Reeves underwent a myelogram. Dr. Wilson testified that the results of the myelogram revealed a compressed nerve root at the L4-5 level of Reeves's spine. Dr. Wilson noted that the defect in the spine found on the myelogram could be the result of an injury or it could occur naturally. Dr. Wilson stated that it was also possible that the May 8, 2000, MRI did not "pick-up" the disk herniation observed on the myelogram.
Dr. Wilson performed a microdiskectomy on Reeves on August 31, 2000. In February 2001, Dr. Wilson determined that no further surgery was needed and returned Reeves to work with a 25-pound lifting restriction. Dr. Wilson opined that, based on the patient history initially provided by Reeves on June 8, 2000, the disk herniation at L4-5 level of Reeves's spine occurred as a result of the September 1998 injury.
Dr. Gerhardt performed the November 1997 and March 2002 surgeries on Reeves's back. Dr. Gerhardt testified that Reeves had no prior history of back problems before the 1997 surgery. According to Dr. Gerhardt, the 2002 surgery was required based on symptomatology that was not present in November 1997 before the first surgery. Dr. Gerhardt was unable to state with reasonable certainty what caused the damage to Reeves's back after the 1997 surgery, but he opined that Reeves's 1998 accident was compatible with the type of injury Reeves sustained; he also believed that the treatments Reeves received were necessary as a result of the 1998 injury. Dr. Gerhardt attributed Reeves's need for back surgery in 2002 to his previous back injuries, his subsequent surgeries, and the degenerative changes in his spine.
Dr. Gerhardt and Dr. Wilson both testified that patients who undergo a spinal surgery are more likely to require another surgical procedure on their spine in the future. According to Dr. Gerhardt, scarring from previous back surgeries can contribute to future problems with the back. Dr. Gerhardt opined that Reeves would continue to suffer from ongoing problems with his back.
Dr. Gerhardt referred Reeves for an FCE to assess his work status. The FCE report was conducted on September 6, 2002; according to the report, Reeves was capable of sedentary work. However, the report stated that "it is difficult to predict whether the client is capable of sustaining the sedentary level of work for an 8-hour day." The FCE determined that Reeves had suffered a 28% impairment to the body as a whole.
Dr. Gerhardt testified that Reeves reached maximum medical improvement on October 2, 2002. Dr. Gerhardt opined that Reeves has suffered a 28% whole-body impairment. He concluded that activities that required bending, reaching, pulling, pushing, lifting, and squatting could put Reeves at risk of reinjuring his back. Dr. Gerhardt testified that Reeves will likely continue to require medication to manage the pain resulting from his back injuries. *Page 746 
Two vocational experts evaluated Reeves to determine his potential vocational disability. Tom Clark conducted an evaluation on behalf of BEK. Clark testified that Reeves appeared to be distracted by pain during his evaluation. According to Clark, assuming Reeves is capable of working at a sedentary level and maintaining a normal work schedule, Reeves has an 85% to 90% vocational disability. However, Clark noted that Reeves would be 100% vocationally disabled if he was unable to return to work at a sedentary level on a normal basis.
Reeves's vocational expert, Russ Gurley, similarly concluded that Reeves would not be 100% vocationally disabled if he were able to perform at a sedentary level for an eight-hour day. However, Gurley concluded that, given Reeves's work history, the limitations assigned by the FCE, and his subjective reports of pain, Reeves was 100% vocationally disabled.
BEK raises five issues on appeal: (1) whether the trial court erred in finding that the 1998 injury caused Reeves's current disability; (2) whether the evidence supports a determination that Reeves provided BEK with sufficient notice of his injuries; (3) whether the trial court erred in determining that Reeves was permanently and totally disabled; (4) whether it was error to hold BEK responsible for the payment of unauthorized medical treatment; and (5) whether the trial court erred by ordering BEK to pay Reeves benefits for the remainder of his life.
When this court reviews a trial court's factual findings in a workers' compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Further, this court reviews the facts "in the light most favorable to the findings of the trial court."Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Indus.,Inc., 680 So.2d 262 (Ala. 1996). This court has also concluded: "The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court."Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995).
On appeal, BEK contends that the trial court's determination that Reeves's September 1998 injury caused his current disability was unsupported by substantial evidence. BEK argues that Reeves did not present substantial evidence of legal or medical causation. Specifically, BEK maintains that the evidence demonstrates that the 1998 injury to Reeves's back was merely a recurrence of his prior 1997 injury and did not cause or contribute to his current disability.
 "[F]or an injury to be compensable under the Workers' Compensation Act, the employee must establish both legal and medical causation. Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought."
Ex parte Moncrief, 627 So.2d 385, 388 (Ala. 1993) (citation omitted).
It is well settled that no preexisting condition is deemed to exist for the purposes of a workers' compensation award if the employee was able to perform the duties of his job before suffering the injury *Page 747 
made the basis of the claim. Jackson v. Comptronix Corp.,679 So.2d 1079 (Ala.Civ.App. 1996); Holmes v. Gold Kist, Inc.,673 So.2d 449 (Ala.Civ.App. 1995). This court has also held that
 "if a previous injury or infirmity has not demonstrated itself as disabling and has not prevented the employee from performing his job in a normal manner, then the preexisting condition or disability does not disqualify the claim under the `arising out of and in the course of his employment' requirement of the statute."
Tarver v. Diamond Rubber Prods. Co., 664 So.2d 207, 210
(Ala.Civ.App. 1994) (citing Blue Bell, Inc. v. Nichols,479 So.2d 1264 (Ala.Civ.App. 1985)).
In its September 2003 final judgment, the trial court, while noting that Reeves had previously injured his back in 1997, specifically found that "Reeves returned . . . to work for BEK with no limitations following that injury." The trial court also concluded that after his September 1998 injury Reeves "did not suffer any distinct intervening injury" but that the 1998 injury caused Reeves's present disability.
Reeves testified that he had experienced no problems in discharging his work duties until the September 1998 accident. Dr. Gerhardt testified that Reeves's 1998 injury necessitated the treatment Reeves had received in the form of epidural blocks, surgeries, and medications. Dr. Wilson opined that Reeves's herniated disk at L4-5 was caused by the 1998 injury. Reeves testified that after the 1998 injury he received no new injuries to his back. Although Reeves testified that he had pulled a muscle in his back while attempting to lift a fork bar, the trial court could have believed Reeves's testimony that the pain resulting from his attempt to lift the fork bar was distinguishable from the pain he felt following the September 1998 injury. Our review of the trial court's judgment is limited to whether the trial court's findings are supported by substantial evidence. Pearson v. Reflector Hardware Corp.,710 So.2d 443, 445 (Ala.Civ.App. 1997). We have carefully reviewed the testimony and evidence contained in the record on appeal and conclude that the record contains substantial evidence to support the trial court's judgment finding that Reeves suffered an on-the-job injury in 1998 and that the 1998 injury caused his disability.
BEK also contends on appeal that the trial court erred by finding that Reeves gave BEK sufficient notice of his September 18, 1998, injury. Section 25-5-78, Ala. Code 1975, the notice provision of the Workers' Compensation Act, provides as follows:
 "For purposes of this article only, an injured employee or the employee's representative, within five days after the occurrence of an accident, shall give or cause to be given to the employer written notice of the accident. If the notice is not given, the employee or the employee's dependent shall not be entitled to physician's or medical fees nor any compensation which may have accrued under the terms of this article, unless it can be shown that the party required to give the notice had been prevented from doing so by reason of physical or mental incapacity, other than minority, fraud or deceit, or equal good reason. Notwithstanding any other provision of this section, no compensation shall be payable unless written notice is given within 90 days after the occurrence of the accident or, if death results, within 90 days after the death."
The purpose of the notice provision of the Workers' Compensation Act is to allow the employer to "make a prompt examination, provide proper treatment, and protect itself *Page 748 
against simulated or exaggerated claims." Russell Coal Co. v.Williams, 550 So.2d 1007, 1012 (Ala.Civ.App. 1989). However, written notice is not required if the employer had actual knowledge that the employee was injured in the line and scope of his employment. Wal-Mart Stores, Inc. v. Elliott,650 So.2d 906, 908 (Ala.Civ.App. 1994).
Reeves adduced undisputed evidence at trial that he informed Tumbleston, his immediate supervisor, that he had been injured in the line and scope of his employment within five days of the occurrence of the accident. Tumbleston admitted that Reeves informed him that he had injured his back while working in Bridgeport. The "Employer's First Report of Injury" completed by Tumbleston on August 24, 2000, acknowledges that on September 18, 1998, Reeves sustained an injury to his back. Further, BEK had documentation of two of Reeves's doctors visits on November 2 and 5, 1998, to Brookwood Orthopedic Associates, P.C.
In support of its argument on appeal, BEK relies on Mid-SouthElectric Co. v. Jones, 848 So.2d 998 (Ala.Civ.App. 2002), an opinion authored by one judge in which three other judges concurred in the result, that, it contends, is factually similar to the case at bar. However, our review of the facts set forth inMid-South v. Jones reveals that it is factually distinguishable from the case at bar. In Mid-South, the employee, Jones, alleged that she had satisfied the notice requirement of §25-5-78, Ala. Code 1975, when she told her supervisor that she had injured her back. After informing her supervisor of her injury, the employee sought medical treatment. Undisputed evidence revealed that the employee informed her doctor that she had injured her back at home and that she was on disability leave unrelated to workers' compensation. 848 So.2d at 1000. The employee filed her workers' compensation claim after she was terminated from her employment for failing to report to work. The employee explained that she concealed her work-related injury because, among other reasons, she wanted a doctor of her own choosing to treat her injury.
The trial court's judgment in Mid-South awarded the employee workers' compensation benefits, found that the employee had given oral notice of the accident, and determined that she was permanently and totally disabled. The employer appealed. This court concluded that the employee's actions defeated the purpose of the notice statute. Specifically, we held that "the employee cannot now, after making a deliberate decision not to elect workers' compensation coverage and to receive extensive medical treatment (including two surgeries) from a physician of her own choosing, decide to seek workers' compensation benefits."Mid-South v. Jones, 848 So.2d at 1000.
Unlike the employee in Mid-South, there is no evidence in the record before us that Reeves deliberately concealed his work-related injury in an effort to seek treatment from doctors of his own choosing. Reeves timely reported his injury to his supervisor. Although he filed his claims for medical treatment under his personal health insurance, the trial court could have determined on the basis of Reeves's testimony that Reeves did not do so with the intent to forgo workers' compensation benefits only to later decide to file for those compensation benefits.
BEK further argues that the trial court's determination that Reeves is permanently and totally disabled is not supported by substantial evidence. "`The trial court has much discretion in determining the loss of ability to earn and may consider such factors as age, education, past work history, and the effect of the *Page 749 
injury on the employee's earning ability.'" G.UB.MK.Constructors v. Traffanstedt, 726 So.2d 704, 708 (Ala.Civ.App. 1998) (quoting Paschel v. Emro Mktg. Co., 632 So.2d 971, 973
(Ala.Civ.App. 1993)). Additionally, the assignment of the extent of disability is within the trial court's discretion and cannot be disturbed on appeal if there is evidence to support that decision. Golden Poultry Co. v. Staggs, 660 So.2d 1348, 1352
(Ala.Civ.App. 1995).
"Permanent total disability" is defined in § 25-5-57(a)(4)d., Ala. Code 1975, to include "any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment." Total disability does not mean absolute helplessness, but means that the employee is not able to perform his or her trade and is unable to obtain other reasonably gainful employment. Mayfield Trucking Co. v.Napier, 724 So.2d 22 (Ala.Civ.App. 1998). In making this determination, the trial court is not bound by expert testimony, but must consider all the evidence, including its own observations, and interpret it to its own best judgment. G.UB.MKConstructors v. Traffanstedt, supra. The court may consider the employee's own subjective complaints of pain in determining disability. Elite Transp. Servs. v. Humphreys, 690 So.2d 439
(Ala.Civ.App. 1997).
The evidence presented to the trial court reveals that Reeves has a seventh-grade education and has primarily worked in jobs that require performing manual labor and repairing heavy equipment. In August 2000, Reeves underwent a lumbar microdiskectomy but showed no improvement after the surgery. In March 2002, Reeves underwent a second surgery to fuse his vertebrae. Reeves returned to work in June 2002 and worked in a sedentary position handling paperwork. The record indicates that, although BEK attempted to accommodate Reeves, he was unable to fulfill the requirements of his job after his March 2002 surgery.
According to the testimony at trial, Reeves takes medication for pain several times a day and uses a TENS unit three to four times a day to help alleviate his pain. Reeves walks with a limp and is unable to stand straight. It is difficult for Reeves to stand or to sit for long periods of time. The FCE report places Reeves in the "sedentary" work category and notes that it is unclear whether Reeves is capable of working an eight-hour day.
The trial court was presented with testimony from two vocational experts who both agreed that Reeves was 100% disabled if he was unable to perform at a sedentary level for an eight-hour day. Reeves testified that he is unable to work eight hours a day. According to Reeves, he was only able to work six hours a day after returning to work in June 2002. Reeves's vocational expert concluded that Reeves was 100% disabled given his work history, the FCE, and his reports of pain. The vocational expert retained by BEK concluded that Reeves was 85% to 90% disabled if Reeves was capable of performing sedentary work for an eight-hour day.
Where, as here, the trial court heard testimony during an ore tenus proceeding, its findings based on that testimony are presumed correct and will not be reversed on appeal unless they are clearly erroneous and without substantial evidence. MutualSav. Life Ins. Co. v. Hogue, 693 So.2d 530 (Ala.Civ.App. 1997). The findings of the trial court with regard to Reeves's degree of disability are supported by the record. In light of the foregoing, we cannot say the trial court *Page 750 
erred in finding Reeves permanently and totally disabled.
BEK also contends that the trial court erred by finding that it was responsible for unauthorized medical treatment received by Reeves following his September 1998 injury. Specifically, BEK contends that Reeves did not request medical treatment relating to his September 1998 injury and that he failed to notify BEK that he needed medical treatment until August 2000. BEK notes in its brief on appeal that Reeves admitted at trial that he was never denied medical treatment for his injury but that he merely submitted it under his personal health insurance provided by BEK.
The Workers' Compensation Act provides that an employer is not liable for medical or surgical treatment provided by a physician who has not been authorized by the employer to provide such treatment. See § 25-5-77, Ala. Code 1975. In Sheppard v. MasseyHauling Co., 726 So.2d 682 (Ala.Civ.App. 1998), we stated:
 "This court has explained that the purpose behind the law is to strike a balance between the value of allowing a patient to choose his own doctor and the value of `achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury.' As Professor Larson explained:
 "`If the injured employee has completely unlimited free choice of his doctor, in some cases he may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process.'
 "The law does provide for four instances in which the employee is justified in incurring medical expenses without first obtaining the employer's authorization:
 "`(1) where the employer has neglected or refused to provide the necessary medical care; (2) where the employer has consented to the selection by the employee; (3) where notice of and request for alternative care would be futile; and (4) where other circumstances exist which justify the selection of alternative care by the employee.'"
726 So.2d at 685 (citations omitted).
As noted earlier in this opinion, the trial court's judgment finding that Reeves provided actual notice of his September 1998 injury to BEK is supported by substantial evidence. Indeed, Tumbleston's testimony confirmed that Reeves stated that he had provided notice of his injury within five days of the date of the accident.
The record indicates that the trial court was presented with conflicting evidence regarding Tumbleston's knowledge of Reeves's medical treatment for his back. According to Reeves, Tumbleston knew that he had injured his back in a work-related accident and that he was seeking treatment for that injury. Reeves testified that he sought and received permission from Tumbleston to go to his doctor appointments. The record indicates that Reeves had over 20 doctor appointments between the September 1998 injury and his surgery in August 2000. Reeves's testimony revealed that he was unaware of the difference between filing his medical-treatment claims under his personal health insurance and filing the claims as workers' compensation claims. According to Reeves, BEK never gave him instructions regarding the proper procedure to *Page 751 
follow with regard to seeking medical treatment for a work-related injury.
Tumbleston testified that Reeves did not inform him that he needed medical treatment for his back or that he was receiving any medical treatment for his back until August 24, 2000, when Tumbleston filed the "Employer's First Report of Injury." According to Tumbleston, he would have filled out the report earlier if Reeves had indicated he needed medical treatment for his back in September 1998 when the injury first occurred. Tumbleston testified that he always sat down with employees when reporting on-the-job injuries as soon as possible after the injury in order to document the facts while fresh on the mind of the employee; there is no indication in the record why Tumbleston did not document the facts relating to Reeves's 1998 injury before August 2000.
Tumbleston acknowledged that BEK employees received no instruction regarding the procedures that they should follow in seeking medical treatment for an on-the-job injury. According to Tumbleston, employees are only told to report those injuries to their immediate supervisor; he noted that Reeves always reported his on-the-job injuries. Tumbleston maintained that Reeves should have known how to report on-the-job injuries based on two work-related injuries he sustained in January 1997 and in March 1997.
We first note that it is not within the province of this court to resolve any conflicts that might appear in the evidence before the trial court; rather, we must determine if the findings of the trial court are supported by substantial evidence. Ex parteTrinity Industries, 680 So.2d 262 (Ala. 1996), citing Jones v.LeFlore, 421 So.2d 1287 (Ala.Civ.App. 1982). Following that general rule, as explained below, we conclude that there was substantial evidence to support the trial court's judgment ordering BEK to pay Reeves compensation benefits for past medical treatment.
In its September 10, 2003, judgment, the trial court ordered BEK to pay Reeves $17,171.80 for past medical expenses. Although it is undisputed that Reeves did not receive medical treatment from an authorized treating physician as provided for in §25-5-77, the law provides for an exception for instances in which the employer has neglected or refused to provide the necessary medical care. See Sheppard v. Massey Hauling Co., supra. Although Reeves's medical claims were initially paid by his personal health insurance, the record indicates that outstanding bills relating to his March 2002 surgery were not paid.
We have carefully reviewed the record and find that the trial court could have concluded that BEK neglected to provide the medical care necessary to treat Reeves's on-the-job injury. BEK received actual notice of Reeves's on-the-job injury on September 21, 1998, and written notice of the injury in August 2000, albeit two years after the injury. The "Employer's First Report of Injury" was completed by Tumbleston on August 24, 2000, one week before Dr. Wilson performed the microdiskectomy on Reeves. In light of the evidence presented at trial, the trial court could have concluded that, based on Reeves's testimony, Tumbleston's admission that Reeves informed him about the injury, and the "Employer's First Report of Injury" filed approximately two years before the 2002 surgery, BEK had notice that Reeves was actively seeking medical treatment as a result of his September 1998 injury. It is undisputed that Reeves sought permission from his supervisor before leaving work to attend doctor appointments; records from two appointments Reeves had a little more than one month after the September 1998 injury indicate that BEK had documentation relating to *Page 752 
Reeves's medical treatment. Given the evidence presented at trial, we cannot say that the trial court erred by ordering BEK to pay Reeves's past medical expenses relating to his 2002 surgery.
BEK also maintains that Reeves failed to present any evidence that the unpaid medical expenses relating to his 2002 surgery were the direct result of "reasonably necessary medical and surgical treatment" for his September 1998 injury. The trial court was presented with conflicting medical testimony regarding the necessity of the 2002 surgery. Dr. Wilson testified that surgeries involving long-segment fusions of the spine such as the one performed by Dr. Gerhardt on Reeves in 2002 were "controversial." He further noted that physicians generally have different opinions regarding the effectiveness of those types of surgeries. Dr. Gerhardt testified that the surgery to fuse Reeves's spine was necessary given the condition of Reeves's spine at the time surgery was performed in 2002.
Contrary to BEK's assertion on appeal, the trial court was presented with evidence regarding the necessity of the 2002 surgery. Although the evidence presented before the trial court was conflicting, the trial court resolved the conflict in favor of Reeves. Given the evidence before the trial court, we cannot say that the trial court erred in reaching its judgment on this issue.
In its brief on appeal, BEK asserts that, assuming this court affirms the trial court's judgment in full, the trial court's award of benefits to Reeves for the "rest of his life" is due to be reversed. In Bostrom Seating, Inc. v. Adderhold,852 So.2d 784, 796 (Ala.Civ.App. 2002), this court, relying on Thompson Co. Contractors v. Cole, 391 So.2d 1042 (Ala.Civ.App. 1980), reversed a trial court's judgment insofar as it awarded the employee permanent total disability benefits "`for the remainder of [the employee's] life.'" 852 So.2d at 796. In Thompson, this court held:
 "Section 25-5-57(a)(4)a provides that compensation for a permanent and total disability is to be paid `during such permanent total disability.'
 "As clearly provided by the Code section, the period of compensation for permanent total disability lasts only so long as the disability continues. Should the disability cease to be other than total at some future time, the compensation for permanent total disability could be terminated. § 25-5-57(a)(4)b, Code of Alabama 1975. Thus, the trial court's award is an incorrect application of the statute."
391 So.2d at 1046. Therefore, the judgment of the trial court, insofar as it awards Reeves permanent total disability benefits for the rest of his life, incorrectly applies the statute and is due to be reversed as to that issue. The case is remanded for the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] Before the trial in this matter, the parties stipulated to the amount of out-of-pocket medical expenses Reeves had incurred, but they did not agree that BEK was responsible for the payment of those expenses.
[2] The record indicates that the documentation of the November 2 and 5, 1998, visits was produced by BEK before trial; however, BEK specifically noted that it was unclear if the documentation was found in Reeves's employee file.
[3] A fork bar is a round, solid piece of metal that holds the forks on a forklift.
[4] A TENS unit produces electrical nerve stimulation signals that prevent pain signals from reaching the brain.
[5] Reeves's personal health insurance is provided by BEK to its employees. *Page 753