[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 276 
Mary Kate Wallace sued Reeves Rubber, Inc., seeking workers' compensation benefits for an alleged injury to her back sustained on January 29, 2001, in the line and scope of her employment. Reeves Rubber answered and denied liability. Following the presentation of ore tenus evidence, the trial court entered a detailed judgment on June 9, 2004, determining that Wallace was permanently and totally disabled as a result of the work-related injury and awarding benefits accordingly. In reaching its determination, the trial court found, among other things, that Wallace's January 29, 2001, injury to her back arose out of and in the course of her employment with Reeves Rubber and that Wallace had suffered a new injury and/or an aggravation of an existing injury. The trial court ordered Reeves Rubber to pay Wallace permanent and total disability workers' compensation benefits "for the remainder of her life." Reeves Rubber was also ordered to "authorize and bear the cost of all medical treatment to be performed by Dr. Larry Parker" as it relates to the January 29, 2001, on-the-job injury. The trial court ordered Reeves Rubber to pay $3,199.83 in costs. No postjudgment motions were filed, and Reeves Rubber timely appealed.
The record reveals the following pertinent facts. At the time of trial, Wallace was 62 years old. Wallace completed the 10th grade and later received her GED. Wallace has worked the majority of her life. Before working at Reeves Rubber, *Page 277 
Wallace had worked as a seamstress and as an assembly line worker. She had also helped manage a family grocery store and had arranged artificial flowers. At the time of the accident, Wallace rotated among three positions at Reeves Rubber; the positions she rotated among were office clerk, lab technician, and splicer. It was while attempting to perform her job duties as a splicer that Wallace injured herself.
On January 29, 2001, Wallace injured her back after lifting scrap rubber off of a table at work. Wallace testified that she felt immediate pain in her lower back after she removed the scrap rubber from the table. According to Wallace, she had never felt pain that severe. Wallace immediately reported her injury to her supervisor. On the day of her accident, immediately following the end of her work shift, Wallace went to Dr. Bechert, a chiropractor, for treatment; Wallace had already scheduled an appointment with Dr. Bechert for that day. Before her January 29, 2001, visit to Dr. Bechert following her on-the-job injury, Wallace had seen Dr. Bechert on January 19, 2001, and on January 22, 2001, for treatment. Wallace testified that she initially sought treatment from Dr. Bechert for back discomfort related to kidney stones. According to Wallace, the pain she felt in her back following the January 29, 2001, accident was sharp and severe, whereas the pain she felt before the accident was generally a "soreness."
Dr. Bechert testified by deposition that Wallace reported during her first visit that her back had been bothering her for six months. According to Dr. Bechert, Wallace did not indicate at that time that a trauma had caused her back pain. Dr. Bechert testified that Wallace indicated that she had been having problems with her kidneys for approximately six months. Dr. Bechert testified that the lower-back pain Wallace experienced before her on-the-job injury could be related to her kidney problems and that kidney stones can contribute to lower-back pain. Wallace testified that her initial treatment with Dr. Bechert did not completely resolve the pain in her back.
Wallace sought treatment for her back pain from Dr. John Boggess, her family physician since 1985. On February 26, 2001, Dr. Boggess examined Wallace and diagnosed her as suffering from a lumbar strain; he restricted Wallace from lifting any weight greater than five pounds. On March 13, 2001, Dr. Boggess noted that Wallace's back pain had improved; however, Wallace continued to work with the restriction given by Dr. Boggess. In April 2001, Wallace returned to Dr. Boggess for treatment and reported pain radiating down her left leg. A CAT scan performed in May 2001 indicated that Wallace suffered from degenerative disc disease at L5-S1 and a possible protruding disc at the L5-S1 level. Wallace's complaints of pain continued to increase, and the pain radiated down both of her legs. On October 16, 2001, Dr. Boggess diagnosed Wallace as suffering from chronic back pain and referred Wallace for a functional capacities evaluation ("FCE") to assess her work status. The FCE was conducted on October 25, 2001; according to the FCE report, Wallace was capable of performing work at a light-physical-demand strength level on an occasional basis.
On November 13, 2001, Wallace sought treatment from Dr. James P. Bailey, an orthopedic surgeon. Dr. Bailey examined Wallace and diagnosed her with lumbar degenerative disc disease. Dr. Bailey found no surgical lesions and recommended that Wallace seek treatment from a pain-management clinic. On January 4, 2002, Dr. Bailey opined that Wallace had *Page 278 
reached maximum medical improvement and released her to return to work. Wallace also sought treatment from Dr. William Haller, an orthopedic surgeon, for her back pain. Dr. Haller diagnosed Wallace with chronic lower-back pain and permanently restricted Wallace to sedentary work.
Wallace returned to Dr. Boggess for treatment in January 2002 for her chronic back pain. Wallace continued to complain of pain in her back and pain radiating down her right leg. On October 3, 2002, Dr. Boggess concluded that Wallace would not be able to return to work and that she was 100% permanently and totally disabled.
Wallace testified that, before the January 29, 2001, accident, she had never had to have special accommodations for any medical reasons while working at Reeves Rubber. According to Wallace, she was capable of performing her job duties before the January 29, 2001, accident. Wallace testified that since the accident the pain in her back has increased and become "chronic" in nature; she noted that she is never free from pain. According to Wallace, she had never experienced pain radiating down her legs before the accident. Wallace testified that her physical activity has been severely limited since the January 2001 accident. Wallace testified that she drives on occasion and that pain in her legs prevents her from walking for exercise. According to Wallace, the pain also prevents her from sleeping for longer than three hours at a time at night.
Several witnesses testified regarding Wallace's job performance before the January 29, 2001, accident. Jerry Williams, a coworker, testified that Wallace never complained of back pain or pain radiating into her legs before the accident. According to Williams, Wallace was always willing and able to perform her normal job duties before the accident. Bobby Breedwell, Wallace's supervisor, testified that Wallace had no problems or difficulties performing her job duties before the accident. Breedwell testified that Wallace never complained of pain before the accident. According to Breedwell, Wallace was a "great" employee. After the accident Wallace returned to work but, according to Breedwell, she had to leave because she was in so much pain. Gary Wallace, Wallace's husband of 48 years and her coworker, testified that his wife's back discomfort before the accident did not prevent her from performing her job duties at Reeves Rubber. Gary Wallace testified that his wife had had no physical limitations that prevented her from working before the accident. According to Gary Wallace, his wife's condition worsened after the accident; she complained of pain radiating in her hip and down her leg. Gary Wallace testified that his wife would drag her leg. According to Gary Wallace, his wife's right leg "kills her all the time" and affects her ability to sleep.
Two vocational experts evaluated Wallace at different times during her treatment following the January 29, 2001, on-the-job accident to determine her vocational disability. Susan Morrow conducted an evaluation on behalf of Reeves Rubber on November 15, 2001; Morrow prepared three vocational-assessment reports at different times following her evaluation of Wallace. On February 19, 2002, Morrow concluded, using the medical records provided to her, that Wallace had a 23% disability rating. After additional medical records were provided, Morrow, on May 31, 2002, concluded that Wallace had a 54% disability rating. However, in her final vocational-assessment report, Morrow, relying solely on Dr. Bechert's deposition testimony, concluded that Wallace would have no vocational-disability rating as a *Page 279 
result of her January 29, 2001, injury. Patsy V. Bramlett, Wallace's vocational expert, evaluated Wallace on January 28, 2003. In her May 30, 2003, vocational-assessment report, Bramlett concluded that, given the extent of Wallace's pain and her work history, Wallace was 100% vocationally disabled.
Reeves Rubber raised five issues on appeal: (1) whether the trial court erred in finding that the January 29, 2001, accident caused Wallace's current disability; (2) whether the trial court erred in determining that Wallace was permanently and totally disabled; (3)whether the trial court erred in taxing costs to Reeves Rubber; (4) whether the trial court erred in requiring Reeves Rubber to pay for medical treatment provided by Dr. Larry Parker; and (5) whether the trial court erred by ordering Reeves Rubber to pay Wallace benefits for the remainder of her life.
When this court reviews a trial court's factual findings in a workers' compensation case, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). Further, this court reviews the facts "in the light most favorable to the findings of the trial court."Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Indus.,Inc., 680 So.2d 262 (Ala. 1996). This court has also concluded: "The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court."Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995). However, our review as to purely legal issues is without a presumption of correctness. See Holy FamilyCatholic School v. Boley, 847 So.2d 371, 374 (Ala.Civ.App. 2002) (citing § 25-5-81(e)(1), Ala. Code 1975).
On appeal, Reeves Rubber contends that the trial court's determination that Wallace's January 29, 2001, accident caused her current disability was not supported by substantial evidence. Reeves Rubber argues that Wallace failed to present substantial evidence of legal or medical causation. Specifically, Reeves Rubber maintains that the evidence demonstrates that the January 29, 2001, accident and resulting injury amounted to merely a recurrence of an existing back condition and did not cause or contribute to her current disability.
 "[F]or an injury to be compensable under the Workers' Compensation Act, the employee must establish both legal and medical causation. Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought."
Ex parte Moncrief, 627 So.2d 385, 388 (Ala. 1993) (citation omitted).
"It is well settled that no preexisting condition is deemed to exist for the purposes of a workers' compensation award if the employee was able to perform the duties of his job before suffering the injury made the basis of the claim." BE KConstr. Co. v. Reeves, 898 So.2d 738, 746-47 (Ala.Civ.App. 2004), citing Jackson v. Comptronix Corp., 679 So.2d 1079
(Ala.Civ.App. 1996), and Holmes v. Gold Kist, Inc.,673 So.2d 449 (Ala.Civ.App. 1995). This court has also held that
 "`[i]f the employee was able to perform his duties prior to the injury, no preexisting *Page 280 
condition is present for [the] purpose of [workers'] compensation. If a job related injury combines with a preexisting condition to produce a disability, it does not affect a compensation award. Further, if a preexisting condition is aggravated by a work-related injury, the condition is still compensable even though the accident may not have caused the same injury in a normal person.'"
Taylor v. Mobile Pulley Mach. Works, 714 So.2d 300, 302
(Ala.Civ.App. 1997), quoting G.C. Colyer Co. v. McAdams,562 So.2d 1326, 1328-29 (Ala.Civ.App. 1990) (citations omitted).
The evidence presented at trial indicates that Wallace injured her back on January 29, 2001, after lifting scrap rubber off of a table during her work shift; Wallace's supervisor immediately filled out an accident report on the day of the accident. The record does not indicate any other physical trauma that could have caused Wallace's injury other than the January 29, 2001, accident.
Ten days before her accident at work, Wallace sought treatment for back pain from Dr. Bechert, a chiropractor; Wallace related her back pain to kidney stones. Wallace distinguished the pain that she had felt before the accident from the pain that she felt after the accident. According to Wallace, the pain in her back following the accident was sharp and severe as opposed to the dull pain that she had felt in her back before the accident.
The evidence in the record indicates that before the January 29, 2001, accident, Wallace had no problems discharging her work duties. Wallace's coworkers testified that Wallace had never complained of back pain before the accident. The testimony of Wallace's supervisor and performance appraisals admitted into evidence at trial indicate that Wallace performed her job well and was considered a "very good" employee.
Our review of the trial court's judgment is limited to whether the trial court's findings are supported by substantial evidence.Pearson v. Reflector Hardware Corp., 710 So.2d 443, 445
(Ala.Civ.App. 1997). We have carefully reviewed the testimony and evidence contained in the record on appeal, and we conclude that the record contains substantial evidence to support the trial court's judgment finding that Wallace suffered an on-the-job injury on January 29, 2001, and that the January 2001 injury caused her current disability.
Reeves Rubber also contends that the trial court's determination that Wallace is permanently and totally disabled is not supported by substantial evidence. "`The trial court has much discretion in determining the loss of ability to earn and may consider such factors as age, education, past work history, and the effect of the injury on the employee's earning ability.'"G.UB.MK. Constructors v. Traffanstedt, 726 So.2d 704, 708
(Ala.Civ.App. 1998) (quoting Paschel v. Emro Mktg. Co.,632 So.2d 971, 973 (Ala.Civ.App. 1993)). Additionally, the assignment of the extent of disability is within the trial court's discretion and cannot be disturbed on appeal if there is evidence to support that decision. Golden Poultry Co. v. Staggs,660 So.2d 1348, 1352 (Ala.Civ.App. 1995).
"Permanent total disability" is defined in § 25-5-57(a)(4)d., Ala. Code 1975, as "any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment." Total disability does not mean absolute helplessness; rather, it means that the employee is not able *Page 281 
to perform his or her trade and is unable to obtain other reasonably gainful employment. Mayfield Trucking Co. v. Napier,724 So.2d 22 (Ala.Civ.App. 1998). In making its disability determination, the trial court is not bound by expert testimony but must consider all the evidence, including its own observations, and interpret it to its own best judgment. G.UB.MKConstructors v. Traffanstedt, supra. The trial court may consider the employee's own subjective complaints of pain in determining disability. Elite Transp. Servs. v. Humphreys,690 So.2d 439 (Ala.Civ.App. 1997).
The evidence presented to the trial court reveals that Wallace was 62 years old at the time of trial; she has a 10th-grade education and has earned a GED. The majority of Wallace's work history consists of employment within a factory or plant that involved some type of physical labor. After the January 29, 2001, accident, Wallace continued in her employment with Reeves Rubber while continuing to seek treatment for her pain. Although Reeves Rubber attempted to accommodate Wallace's injury, the pain in Wallace's back increased and prevented her from continuing her employment with Reeves Rubber. In light of her chronic back pain, Dr. Haller restricted Wallace to sedentary work and Dr. Boggess concluded that Wallace was permanently and totally disabled. Bramlett, a vocational expert, assigned Wallace a 100% vocational-disability rating.
Wallace described her pain as sharp and severe. Wallace testified that the pain is concentrated in her back, hips, buttocks, and down her right leg. Wallace takes prescription medication for pain in addition to an average of 15 Advil brand nonprescription pills a day to control inflammation. According to Wallace, she is never free from pain. Before the accident, Wallace had an active lifestyle that included gardening, housework, attending ball games, and fishing with her husband. Wallace's husband described her as having been an "athlete" before her January 29, 2001, injury. Wallace testified that her participation in physical activities is limited and that in those instances when she physically exerts herself she is forced to remain in bed the following day to recover from that physical exertion. In addition to her limited physical activity, testimony adduced at trial indicates that Wallace's pain has affected her ability to sleep.
A trial court's observations are of critical importance in a workers' compensation case. "`The trial court is in the best position to observe the demeanor of the employee and other witnesses.'" Ex parte Alabama Ins. Guar. Ass'n, 667 So.2d 97,101 (Ala. 1995), quoting Williams v. Lee Apparel Co.,610 So.2d 410, 412 (Ala.Civ.App. 1992) (emphasis omitted). The findings of the trial court with regard to the degree of Wallace's disability are supported by the record. Accordingly, we cannot say that the trial court erred by finding Wallace permanently and totally disabled.
Reeves Rubber further contends that the trial court erred by awarding costs to Wallace because, it argues, Wallace presented no itemization of her costs and no invoices or receipts evidencing her costs. Section 25-5-89, Ala. Code 1975, provides that "[c]osts may be awarded by [the trial] court in its discretion, and, when so awarded, the same costs shall be allowed, taxed and collected as for like services and proceedings in civil cases." The taxing of costs is generally within a trial court's discretion. Bostrom Seating, Inc. v. Adderhold,852 So.2d 784 (Ala.Civ.App. 2002). However, "[w]here a cost is not substantiated by an `invoice or other evidence,' this court has held that a trial court abused its discretion in awarding the *Page 282 
prevailing employee payment of that cost." Bostrom,852 So.2d at 799, citing Hooker Constr., Inc. v. Walker, 825 So.2d 838,845 (Ala.Civ.App. 2001). The record on appeal contains no motion to tax costs filed by Wallace. Likewise, there are no copies of invoices or receipts to substantiate any of Wallace's costs. Based on this court's holdings in Bostrom and Hooker, the judgment of the trial court is due to be reversed insofar as it awards Wallace $3,199.83 in costs.
Wallace does not disagree with Reeves Rubber as to its contention that the trial court erred by ordering Reeves Rubber to pay for the medical treatment provided by Dr. Larry Parker. The testimony of both Wallace and Dr. Parker confirms that she sought treatment from Dr. Parker without authorization from the workers' compensation insurance carrier. "`Section 25-5-77(a), [Ala.] Code 1975, requires the employer to pay the actual cost of reasonably necessary medical and surgical treatment, physical rehabilitation, and medicine if the treatment is obtained by anauthorized physician.'" Consolidated Constr. Co. v. Quinlan,832 So.2d 648, 652 (Ala.Civ.App. 2002), quoting Alverson v.Fontaine Fifth Wheel Co., 586 So.2d 216, 217 (Ala.Civ.App. 1991) (emphasis added).[1] Therefore, that portion of the trial court's judgment ordering Reeves Rubber to pay for treatment provided by Dr. Larry Parker is due to be reversed.
Wallace also concedes on appeal that the trial court erred by awarding Wallace workers' compensation benefits "for the remainder of her life." Indeed, this court has consistently reversed judgments in which an employee was awarded permanent-total-disability benefits for the remainder of the employee's life. BE K Constr. Co. v. Reeves, supra; BostromSeating, Inc. v. Adderhold, supra; and Thompson Co.Contractors v. Cole, 391 So.2d 1042 (Ala.Civ.App. 1980). Therefore, that portion of the trial court's judgment awarding Wallace permanent-total-disability benefits for the rest of her life is reversed.
In light of the foregoing, we affirm the judgment of the trial court insofar as it finds that Wallace suffered a permanent and total disability as a result of the January 29, 2001, accident. We reverse the judgment of the trial court insofar as it holds Reeves Rubber responsible for the payment of treatment by Dr. Parker, orders Reeves Rubber to pay permanent-total-disability benefits for the remainder of Wallace's life, and orders Reeves Rubber to pay $3,199.83 in costs. The case is remanded for the trial court to enter a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] Alabama law provides four instances in which an employee is justified in incurring medical expenses without first obtaining authorization from an employer. See City of Auburn v. Brown,638 So.2d 1339 (Ala.Civ.App. 1993). However, Wallace does not argue on appeal that treatment by Dr. Parker falls within one or more of the four exceptions provided by law. *Page 283